IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CHARLES KENNEY, | : | CIVIL NO.1:13-CV-2743 |
| Petitioner | : | |
| | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN J.E. THOMAS, | : | |
| Respondent | : | |

## **MEMORANDUM**

      Before the court is a December 6, 2013, report of the magistrate judge to whom this matter was referred in which he recommends that Petitioner's motion for writ of habeas corpus pursuant to 28 U.S.C. § 2241 be dismissed. The magistrate judge gave preliminary consideration to the habeas petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1(b)).

      Petitioner's claims appear to be that his designation to the Bureau of Prisons' Special Management Unit ("SMU") is improper as the program is illegal and he wishes release from the program or a transfer. The magistrate judge opined that placement in the SMU does not raise a habeas claim and should be dismissed. The magistrate judge also opined that Petitioner's placement in the SMU without procedural due process safeguards does not state a constitutional claim. *Wilkinson v. Austin*, 545 U.S. 209 (2005); *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Fraise v. Terhune*, 283 F3d 506 (3d Cir. 2002). The magistrate judge recommended, based on the above, that the petition for writ of habeas corpus be dismissed without directing service on the respondent and that Petitioner be granted leave to proceed *in forma pauperis* solely for the purpose of filing this action. Petitioner has filed objections to the report and recommendation and this matter is ripe for disposition.

In his objections, Petitioner primarily disputes that his present conditions of confinement in the SMU exceed the conditions found in *Wildinson, Sandin* and *Fraise, supra*. He alleges the following conditions:

> 1) All phases and classification of SMU-inmates are "mixed" up together and "fatally" paired[ ] by force, despite their phases;
> 2) In cell blocks B, C, D, E, F, G, H, I, and J exist no in cell showers;
> 3) There exist absolutely no human contact between SMU inmates and their visitors;
> 4) Large florescent cell lights are "forced" to stay on from 5:30 A.M. to 10:00 P.M. 7-days-a-week, 365 days-a-year.
> 5) Telephone usage is limited to only two-fifteen-minute calls a moth, or 30-minutes per month;
> 6) There exist absolutely no way to summon for help in the event of an in cell emergency. Yelling through a solid-steel-cell-doors is "both" inaudible and impermissible;
> 7) One hour of recreation on Monday-thru-Friday only, depending on institutional mood or needs;
> 8) No ventilation system exist in B, C, D and G Blocks;
> 9) Psychiatric treatment is "prohibited" at USP-Lewisburg's SMU Program [ ];
> 10) Medical braces, bandaids, and bandages are prohibited at USP-Lewisburg's SMU Program;
> 11) There exist no bunk-bed-ladders in B, C, D, E, F, G, H, I, and J Blocks.
> 12) There exist no air-conditioning in B, C, D, E, F, G, H, I, and J Blocks.
> 13) USP-Lewisburg's SMU does not provide thermal underwear, despite it being winter;
> 14) Commissary is restricted and only available "twice" per month;
> 15) Cell space for, for [sic] two-occupants is 5 x 8 in B, C, and D Blocks at USP-Lewisburg's SMU.

(Doc. 7, pp. 4-5.) Kenney claims that these restrictions are more onerous than those in *Wilkinson*, 545 U.S. at 209.

In *Wilkinson*, the court examined the conditions of confinement at the Ohio State Penitentiary and found:

> Conditions at OSP are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units. The latter are themselves a highly restrictive form of solitary confinement. . . . In OSP almost every aspect of an

2

> inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
>
> Incarceration at OSP is synonymous with extreme isolation. In contract to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.

*Wilkinson*, 545 U.S. at 214. The Court found these conditions implicated Plaintiff's due process right.

In *Fraise v. Terhune,* 283 F.3d 506, 509 (3d Cir. 2002), the court found that avoiding placement in the Security Threat Group Management Unit ("STGMU") in the New Jersey prison system is not a protected liberty interest. the court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU. The procedures used in determining whether an inmate is a core STG member met procedural due process. *Id.* at 523.

The "additional restrictions" were addressed by the dissent in *Fraise* as follows: strip searches each time an inmate left or returned to their cells; five hours per week outside of cells; a single non-contact visit each month; one monitored telephone call per week; prohibition on correspondence with any other inmates; all meals eaten in cells; no access to regular prison programs. *Id.* at 523 n.1. Most of the restrictions the SMU imposes on Kenney are no greater than those imposed in *Francis v. Dodrill,* 2005 WL 2216582 (M.D. Pa. 2005).

Kenney, however, does mention certain medical deprivations which need to be addressed.  Kenney claims in an affidavit in support of his objections to the report and recommendation that he is not getting prescribed medications that manage his psychosis; he is precluded from seeing a qualified physician (psychiatrist) which he claims places his life in "imminent danger."  (Doc. 8.) Whether these alleged deprivations constitute an atypical and significant hardship as to implicate due process rights, this court at this time is not prepared to address without a response from defendants.  An appropriate order will be issued.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated:  January 3, 2014.